# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TYRESA A. WILLIAMS,
o/b/o T.D.C., a minor,

    *Plaintiff,*

*v.*                    CASE NO. 10-CV-11664

COMMISSIONER OF          DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child, M.C., is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability and supplemental security income ("SSI") benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 16.)

Plaintiff's son, T.D.C,[2] was 9 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 14, 17, 64.) Plaintiff filed the instant claim on December 29, 2006, alleging that T.D.C.'s disability began on August 1, 2006. (Tr. at 64.) The claim was denied at the initial administrative stages. (Tr. at 44.) In denying the claims, the Defendant Commissioner considered asthma and allergies as possible bases of disability. (*Id.*) On April 21, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 11-24.) In a decision dated July 1, 2009, the ALJ found that T.D.C. was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on July 10, 2009. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 17, 2010, when, after the review of additional exhibits[3] (Tr. at 252-311), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On June 16, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

---

[2] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure prohibits the use of a minor's name and requires that only a minor's initials be used.

[3] In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531

3

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen,* 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. §

1382c(a)(3)(C)(i). To determine whether a child's impairment results in marked and severe limitations, Social Security Administration ("SSA") regulations[4] prescribe a three step sequential evaluation process:

1.  If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2.  If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3.  If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id.* § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe

---

[4]For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

6

impairment-related functional limitations." *Id*. An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). If a child's impairments do not "meet" a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It "is 'more than moderate' but 'less than extreme.'" *Id*.

### D.    ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that T.D.C. was a school-age child when the application was filed and that he had not engaged in substantial gainful activity at any time relevant to this decision. (Tr. at 17.) At step two, the ALJ found that T.D.C.'s asthma and allergies were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that T.D.C.'s combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17-23.) Therefore, the ALJ found that T.D.C. was not disabled. (Tr. at 23-24.)

E.     **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff's son, T.D.C., has been treated for coughing and Plaintiff's "feel[ing]s that the child is wheezing" since 2000. (Tr. at 196.) At that time, Plaintiff "questions 'asthma' [and stated that] [t]there is a strong family history of asthma." (*Id.*)

On January 12, 2001, Kamal Mohan, M.D., stated, "I think we are dealing with a patient with asthma, and atopic dermatitis." (Tr. at 203.) T.D.C. was ten months old at the time. (*Id.*)  An x-ray taken on May 26, 2002, showed "subtle density right middle lobe suspicious for early infiltrate." (Tr. at 204.)

T.D.C. was treated at the emergency room of Sparrow Health Systems in Lansing, Michigan, for asthma on December 7,  2005, May 10, 2006, and December 15, 2006. (Tr. at 116, 132, 151.)

Plaintiff has also been treated for asthma at the Pulmonary Clinic and Pulmonary Services since October 2005. (Tr. at 160-67, 214-23, 224-40.) On April 6, 2006, Pulmonary Clinic notes indicated that Plaintiff "wants to know if she can be referred to an allergist, can she have an epi-pen kit (allergic to bees)," noting that T.D.C. had been visiting the clinic for about 6 months and "had about 3-4 colds since then, used oral steroids with one cold, doing well currently per mom." (Tr. at 167.)  In November 2008, Autumn P. Clos, D.O., noted that T.D.C.'s "breath sounds were clear throughout" and his "[c]ough was clear and nonproductive." (Tr. at 224.)  She also found "[n]ormal spirometry," "[n]o significant positive response to bronchodilator seen on spirometry," "[n]o curvature of the flow volume loop," and that T.D.C. "has had not any significant changes in his pulmonary function since prior study done on 1/23/08." (*Id.*)

8

The findings from a chest x-ray taken in November 2004 were "suggestive of mild bronchitis and/or bronchiolitis." (Tr. at 241.) Chest x-rays taken in February, May, and September 2006 were "normal" and showed no evidence of pleural effusion or any other acute cardiopulmonary process or disease. (Tr. at 111, 125, 138, 169.)

On February 1, 2007, Karen Cushing, T.D.C.'s teacher at the Pleasant View Magnet School for the Visual and Performing Arts, completed a Teacher Questionnaire. (Tr. at 152-59.) The form asked teachers to rate a child's abilities in various domains given the following selections: no problem, a slight problem, an obvious problem, a serious problem or a very serious problem. Ms. Cushing's assessment indicated that T.D.C.'s abilities to acquire and use information were between "no problem" and "obvious problem" based on the fact that he "needs lots of support to get his school work finished" and he "gets verbal reminders to stay on task." (Tr. at 153.) Under the attending and completing tasks domain, Ms. Cushing concluded that T.D.C. has between "no problem" and a "very serious problem" because he "has difficulty paying attention in school[,] [e]verything is 'funny' to him[,] [h]e distracts his neighbors to the point that [he] is removed from the group so everyone can get their work finished." (Tr. at 154.)

As to interacting and relating with others, Ms. Cushing indicated that T.D.C. has between "no problem" and "obvious problem" because he is "removed from groups as needed when he becomes too much of a distraction" and because he "has trouble keeping his body under control[,] [h]e hits, kicks, pushes, and runs with no regard for those around him[,] [h]e does hurt other children with his impulsiveness." (Tr. at 155.) Although Ms. Cushing opined that T.D.C. has no or only slight problems in the domain regarding his ability to move and manipulate objects, she indicated that he has a very serious problem "showing a sense of [his] body's location and movement in space." (Tr. at 156.) Ms. Cushing's assessment of T.D.C.'s ability to care for himself

include findings that he has a slight problem handling frustration, an obvious problem being patient, and no problem taking care of personal hygiene, but a serious problem caring for physical needs like dressing (based on Plaintiff's descriptions), no problem identifying and appropriately asserting emotional needs, a slight problem responding appropriately to changes in own mood, using appropriate coping skills, and knowing when to ask for help. (Tr. at 157.) Ms. Cushing commented that T.D.C.'s "mother dresses him and undresses him every day at school, puts his shoes on, etc. She also sits with him and does his morning seatwork. I think the problem here is – he hasn't had a chance to learn!" (Tr. at 157.)

The Asthma form completed by Plaintiff for T.D.C. indicated that although she could not remember the dates of treatment, she had taken T.D.C. to the emergency room after "running[,] sports[,] long distan[ce] walking, exercise[,] [and] cold weather and hot." (Tr. at 79.) In addition, she indicated that T.D.C. "uses his machine when his inhaler fails and when he can't breath or when he gets colds." (Tr. at 80.) Plaintiff also reported that T.D.C. "might miss school three times out of the month due to an attack if he has a severe attack he might stay out longer." (Tr. at 80.) Plaintiff indicated that T.D.C. "doesn't have any behavior problems" and that he does not need to be in any special classes. (Tr. at 81.) Plaintiff indicated that T.D.C. is not expected to do household chores because he "becomes easily winded [and] any sudden move can trigger an attack." (Tr. at 82.) In addition, Plaintiff reported that T.D.C. is able to answer the phone, deliver messages, repeat stories, and prepare food such as sandwiches and cereal with milk. (Tr. at 81-82.) Plaintiff stated that T.D.C. also reads books on a daily basis. (Tr. at 84.) However, Plaintiff stated that T.D.C. "[c]an't run and play or ride a bike like kids his age" and that he "becomes short of breath just walking up the stairs." (Tr. at 85.)

A case evaluation completed by Shakti Kaul, M.D., at the request of the SSA concluded that T.D.C. has "mild to moderately severe asthma, and allergies." (Tr. at 174.) Dr. Kaul also opined that T.D.C.'s impairments do not meet a Listing or functionally equal a Listing. (Tr. at 177-78.)

### F.      Analysis and Conclusions

### 1.      Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's child disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld. Plaintiff specifically contends that the ALJ "erred as a matter of law by failing to find that T.D.C. had a severe limitation in health and physical well-being." (Doc. 12 at 6-8.)

The ALJ cited 20 C.F.R. § 416.926a(l)(4), listed examples cited therein and concluded that T.D.C. has a marked limitation in health and physical well-being.  (Tr. at 23.)  The ALJ found that T.D.C. had less than marked limitations in the other domains and did not have any extreme limitations in any domain. (Tr. at 19-23.)

"Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of*

*Social Security,* 314 Fed. App'x 827, 829 (6th Cir. 2009). 20 C.F.R. § 416.926a(d). An extreme limitation is defined as one that "interferes very seriously with your ability to independently initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3).

As noted and analyzed by the ALJ, the regulations provide examples of limited functioning in the health and well-being domain. They include: (i) "generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s)"; (ii) "somatic complaints related to your impairment(s) (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia)"; (iii) "exacerbations from one impairment or a combination of two impairments that interfere with your physical functioning"; (v) "[y]ou are medically fragile and need intensive medical care to maintain your level of health and physical well-being." 20 C.F.R. § 416.926a(l)(4).

I suggest that substantial evidence supports the ALJ's findings that T.D.C. is not extremely limited in the health and well-being domain and that T.D.C. is not disabled. As an infant, Dr. Kohan stated "I think we are dealing with a patient with asthma . . . " (Tr. at 203) and T.D.C. has been treated in the emergency room and pulmonary clinics. (Tr. at 116, 132, 151,160-67, 214-23, 224-40.) However, in 2006, T.D.C. was "doing well currently per mom." (Tr. at 167.) The results of objective medical tests were similarly not consistent with an extreme limitation. In November 2008, Autumn P. Clos, D.O., noted that T.D.C.'s "breath sounds were clear throughout" and he tested with "[n]ormal spirometry," and "[n]o significant positive response to bronchodilator seen on spirometry." (Tr. at 224.) Chest x-rays after 2004 were all "normal" and showed no evidence

of pleural effusion or any other acute cardiopulmonary process or disease. (Tr. at 111, 125, 138, 169.)

T.D.C.'s teacher indicated that T.D.C. does not have lethargy or weakness issues but rather that he is "removed from groups as needed when he becomes too much of a distraction" because he "has trouble keeping his body under control[,] [h]e hits, kicks, pushes, and runs with no regard for those around him[,] [h]e does hurt other children with his impulsiveness." (Tr. at 155.) T.D.C.'s teacher reported that his "mother dresses him and undresses him every day at school, puts his shoes on . . . and . . . sits with him and does his morning seatwork." (Tr. at 157.) The teacher opined that "the problem here is – he hasn't had a chance to learn!" (*Id.*) Finally, Dr. Kaul concluded that T.D.C. has "mild to moderately severe asthma, and allergies," which do not meet a Listing or functionally equal a Listing. (Tr. at 174, 177-78.) Accordingly, I suggest that there is substantial evidence supporting the ALJ's finding that T.D.C. is not extremely limited in the health or well-being domain.

### 3.    Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                        CHARLES E. BINDER
Dated: March 8, 2011                    United States Magistrate Judge




**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 8, 2011                     By____s/Patricia T. Morris_____
                                            Law Clerk to Magistrate Judge Binder